IN THE SUPERIOR COURT

PUBLICATION



# FILED

March 10, 2020
TAMARA CHARLES
CLERK OF THE COURT

**SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| JUAN CASTILLO; STIRLING CANNONIER; ANDREW BRIDGEWATER; ELISHA MONDESIR; ROGER CAUL; JULIAN THOMAS; TIMOTHY DANIEL; FELTON WARNER; LUIS FULGENCIO; JOHN STEEDLEY; OLIVER MARCELLE; ELI RODRIGUEZ; GRANTLEY YOUNG; ORAL STANLEY; GERALD WELLS; AUBREY MACEDON; SABINO FELIX CASTILLO; ANDRES NIEVES, JR.; ROQUE MELO-POLANCO; ALBERT WILLIAMS; DAVID GRIFFITH; ANTONIO GEORGE; ANDREA FREEMAN; NESSIE SMITHEN-FRANCIS; CECIL COKER JR.; PATRICK CHARLES; WILFRED CANTON; GREGORY BODLEY; STACY ANDREW; REGINALD WILLIAMS; FRANCO ALVAREZ; MAGDALENE WILLIAMS; HORATIUS POPO; VANCE ALEX PEMBERTON; PETERSON MASSICOT; COLLINS MCNEAL MATTHEW; STEVE JAVOIS; RICHARD INCE; MIGUEL ENCARNACION; DESMOND EMANUEL; OMARI DALEY; MAURECIO COMMABATCH; JERRY O'REILLY; TRENT WILLIAMS; DENNIS ANTONIO FERDINAND; RICKY CALEB; KENNETH WILLIAMS; GILBERTO CAMACHO; STEADFORD BUFFONG; CLIFFORD EMMANUEL; STEVE TINDELAND; MALCOLM FABIO, JR., MIGUEL FIGUERGOA; PETER CUFFY; WULSTON PAUL; JOSEPHAT EDWARDS; OVIDIO AQUINO; VINCENT ADAMS, JR.; PAUL STEPHEN HENRY; ORTIZ DWIGHT BROWNE; SHERN MAYNARD; PETER COLE; JOSEPH OSCAR; MARCELLUS PHILLIP; JEFFERY NATIONS; SYRON PETER BLAKE; VIVIAN LAWRENCE; BEDI HUGGINS; EUSTACE CHARLES; MIGUEL BERMUDEZ; PIUS AURELIEN; DENNIS JULES; SIMONE ABRAMSON; PETER GEORGE; MITCHE MATTHEWS; BENEDICT AUSTRIE; DALE ORRIN CONNOR; MANUEL REYES; SYDNEY SEALEY; MIGUEL CAMACHO; JUNIOR RICHARDS; BARRY HALL; BRENT WILLIAMS; JONATHAN SANTIAGO | CASE NO. SX-09-CV-299<br><br>COMPLEX LITIGATION DIVISION<br><br>JURY TRIAL DEMANDED |

GONZALES; DAVID ALEXANDER; HUGH )
EVANS; and VAUGHN NEVIN WARNER, )
)
)
)
Plaintiffs, )
)
v. )
)
ST. CROIX BASIC SERVICES, INC.; BASIC )
INDUSTRIES, INC.; HOVENSA, LLC; and )
AMERADA HESS CORPORATION, )
)
Defendants. )
_____ )

Cite as: 2020 VI Super 35

**Appearances:**

**LEE J. ROHN, ESQ.**
**RHEA LAWRENCE, ESQ.**
Lee J. Rohn and Associates, LLC
Christiansted, VI 00820
*For Plaintiffs*

**GEORGE H. LOGAN, ESQ.**
**CHARLES E. LOCKWOOD, ESQ.**
**CRAIG M. O'SHEA, ESQ.**
Dudley Newman Feuerzeig, LLP
Christiansted, VI 00820
*For Defendants St. Croix Basic Services, Inc. and Basic Industries, Inc.*

**CARL A. BECKSTEDT III, ESQ.**
**EMILY SHOUP, ESQ.**
Beckstedt & Associates, P.C.
Christiansted, VI 00820
*For Defendants HOVENSA, LLC and Amerada Hess Corporation*

## MEMORANDUM OPINION

**MOLLOY,** *Judge.*

¶1 **BEFORE THE COURT** are motions filed by Defendants St. Croix Basic Services, Inc. ("St. Croix Basic") and Basic Industries, Inc. ("Basic Industries") for judgment on the pleadings and by

Defendants HOVENSA, LLC and Amerada Hess Corporation to dismiss for failure to state a claim for relief. Each argues that the complaint, filed on June 18, 2009, must be dismissed because it seeks relief for events that took place on or before January 31, 2003, more than six years before this case was commenced. Thus, "the limitation period has run on every conceivable claim." (Def. St. Croix Basic Servs., Inc.'s Mot. for Jgmt on the Pleadings 1, filed July 20, 2009.) Plaintiffs opposed, claiming *American Pipe* should toll the applicable statutes of limitations because they were putative class members in a District Court of the Virgin Islands ("District Court") action, *Errol Stanley, et al. v. St. Croix Basic Services, Inc., et al.*, Case No. 2003-cv-055. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) ("The Court held in *American Pipe* that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Where class-action status has been denied . . . members of the failed class could timely intervene as individual plaintiffs in the still-pending action . . . [or] 'bring an individual suit rather than intervene . . . .'" (brackets omitted) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-51 (1983)); *see also Stanley v. St. Croix Basic Servs., Inc.*, Civ. No. 2003/0055, 2008 U.S. Dist. LEXIS 107702 (D.V.I. Mar. 4, 2008) (affirming magistrate's denial of leave to amend complaint to add individual plaintiffs) (hereinafter "*Stanley II*"); *see also Stanley v. St. Croix Basic Servs., Inc.*, Civ. No. 2003/0055, 2008 U.S. Dist. LEXIS 90024 (D.V.I. Oct. 31, 2008) (denying motion to certify class and denying motion to certify for interlocutory appeal order affirming magistrate) (hereinafter "*Stanley III*").. Defendants disagreed, claiming Plaintiffs waited too long to file suit.

¶2    Both sides initially assumed that *American Pipe* controls. It does not. *Accord Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. Ct. App. 1995) ("We do not agree that *American Pipe* operates to toll our *state* statute of limitations. That case . . . concerned the question of whether a federal statute of limitations was tolled for the purpose of filing a federal claim." (emphasis added)). Instead, the question, one of first impression, is whether the Virgin Islands should recognize class action tolling. Intra-jurisdictional class action tolling is a rule whereby a court tolls the statute of limitations based on the filing of a class action within that same jurisdiction. "Cross-jurisdictional class-action tolling is 'a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the filing of a class action in another jurisdiction.'" *Adedje v. Westat, Inc.*, 75

A.3d 401, 411 (Md. Spec. Ct. App. 2013) (quoting *Patterson v. Novartis Pharms. Corp.*, 909 F. Supp. 2d 116, 122 (D.R.I 2012)). The majority of courts, following *American Pipe*, recognize intra-jurisdictional tolling but, on cross-jurisdictional tolling, "jurisdictions are split . . . ." *Id.* at 418. *Compare Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998) ("Unless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run."), *with Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 397 (Del. 2013) ("If we do not recognize cross-jurisdictional tolling, putative class members will still be incentivized to file placeholder actions in Delaware to protect their interests in the event that the putative class is not certified.").

¶3     For the reasons stated below, this Court holds that the soundest rule for the Virgin Islands is to recognize intra-jurisdictional class action tolling, and by extension cross-jurisdictional tolling, and further hold that "[t]olling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011). But whether to recognize class action tolling at all, and when such tolling should end, are "controlling question[s] of law" with "substantial ground for difference of opinion." 4 V.I.C. § 33(c). Because "an immediate appeal . . . may materially advance the ultimate termination of [this] litigation," *id.*,[1] the Court will certify these controlling questions to the Supreme Court of the Virgin Islands for interlocutory appeal.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. *Errol Stanley, et al. v. St. Croix Basic Services, Inc., et al.*

¶4     Ninety-two employees of St. Croix Basic lost their jobs on January 31, 2003 after "St. Croix Basic lost its contract with the Hess Defendants and it left the plant, firing all its local employees . . . ." (Compl. ¶ 103.) Two months later, on March 31, 2003, five former employees—Errol Stanley, Nigel

---

[1] As well as several hundred other lawsuits pending in the Complex Litigation Division. *See Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153, 186-88 (Super. Ct. 2015) (cross-jurisdictional) (class certified in 1999; decertified in 2008); *see also Cornwall v. V.I. Indus. Maint. Corp.*, 2019 VI Super 117, ¶ 1 (intra-jurisdictional) (putative class action filed in 2002).

Charles, Melvin Neal, Joseph Sonny, and Wranda Davis[2] (hereinafter *"Stanley* Plaintiffs")—filed a class action in the District Court against St. Croix Basic and Basic Industries (collectively "Basic Defendants") and HOVENSA, LLC ("HOVENSA") and Amerada Hess Corporation ("Hess") (collectively "Hess Defendants") for "wrongful discharge; breach of a duty of good faith and fair dealing; violations of the Virgin Islands Plant Closing Act and the Worker Adjustment Retraining Notification Act; fraud; illegal retaliation and obstruction of justice; and intentional and negligent infliction of emotional distress." *Stanley II*, 2008 U.S. Dist. LEXIS 107702 at *1-2.

¶5     Defendants appeared, answered the complaint, and commenced discovery. The Hess Defendants also moved on October 16, 2003, to dismiss the plant closing act claims, which the District Court denied. *See generally Stanley v. St. Croix Basic Servs, Inc.*, 291 F. Supp. 2d 379 (D.V.I. 2003) (hereinafter *"Stanley I"*) (finding private right of action under the Virgin Islands Plant Closing Act and rejecting assertion that Hess Defendants could not be considered *Stanley* Plaintiffs' employers under the Act). Discovery continued. "On July 21, 2005, the [District] Court, acting *sua sponte*, ordered the Plaintiffs to move to certify their class by September 30, 2005." *Stanley II*, 2008 U.S. Dist. LEXIS 107702 at *3. But rather than file the motion, the *Stanley* Plaintiffs instead "announced to the Magistrate Judge and opposing counsel [on September 29, 2005,] that Plaintiffs would not move for certification because the Third Circuit purportedly requires at least 290 plaintiffs to proceed as a class action." *Id.* The District "Court [then] ordered Plaintiffs to move to amend their complaint by December 29, 2005," *id.*, which they did, *see id.*, at least in a sense.

¶6     A motion to amend the complaint was filed on December 29, 2005, purportedly by the *Stanley* Plaintiffs. But in fact, the December 29, 2005 motion was brought on behalf of seventy-seven former co-workers of the *Stanley* Plaintiffs. The motion explained that the *Stanley*

> Plaintiffs originally believed the number of Plaintiffs was so numerous that it qualified as a class. However, upon interviewing persons it was determined that the number is small enough to name each Plaintiff individually. Plaintiffs are requesting to amend the Complaint only to individually name parties not listed in the First Amended Complaint but whom Defendants had notice of as they were part of the proposed class.

(Ex. 4, Pls.' Mot. to Amend Compl. 1, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, ECF No. 106,

---

[2] Purportedly, due to a scrivener's error, "Wranda Davis" was really "Wranda Dariah" and "Rachel Davis" combined. Neither was named in this lawsuit, but the error played a role as noted further below.

1:03-cv-00055 (D.V.I. Dec. 29, 2005), *attached to* Pls.' Mem. in Opp'n to Hess Corp. & HOVENSA, L.L.C.'s Motions to Dismiss for Failure to State a Claim, filed Sept. 28, 2009 (hereinafter "Opp'n")).[3] Another ten former co-workers sought to join *Stanley* through a February 1, 2006 motion to add additional plaintiffs.[4] (*See* Ex. 5, Pls.' Mot. to Add Add'l Pls. to First Amend. Compl., *Stanley, et al. v. St. Croix Basic Servs., Inc.,* et al., ECF No. 111, 1:03-cv-00055 (D.V.I. Feb. 1, 2006), *attached to* Opp'n.) After several unopposed extensions, Defendants filed their responses in opposition to adding eighty-seven more people to *Stanley*. The magistrate judge, in a July 14, 2006 Order, agreed. In denying the motions, the District Court found that

> [a]dding additional named Plaintiffs at this juncture would only further prolong the delay in resolving this matter and will likely result in lengthy new discovery further delaying resolution . . . . [and] place an unfair burden on Defendants by further lengthening the time and resources they must allocate to this case after they have already addressed Plaintiffs' initial complaint and discovery requests.

(Ex. 6, Order 4, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.,* ECF No. 129, 1:03-cv-00055 (D.V.I. Feb. 1, 2006), *attached to* Opp'n.) The *Stanley* Plaintiffs immediately appealed the magistrate's July 14, 2006 Order to the judge, who affirmed two years later in a March 4, 2008 memorandum opinion and order. *See generally Stanley II,* 2008 U.S. Dist. LEXIS 107702 at *11 ("Citing undue delay and prejudice, the Magistrate correctly applied the law and appropriately denied Plaintiffs' Motion to Amend their Complaint. For the reasons set forth herein, the Magistrate's Order Regarding Plaintiffs' Motion to Amend their Complaint is **AFFIRMED.**").

---

[3] The seventy-seven individuals who sought to intervene on December 29, 2005 were: Juan Castillo, Stirling Cannonier, Andrew Bridgewater, Elisha Mondesir, Roger Caul, Julian Thomas, Timothy Daniel, Felton Warner, Luis Fulgencio, John Steedley, Oliver Marcelle, Eli Rodriguez, Grantley Young, Oral Stanley. Gerald Wells, Aubrey Macedon, Sabino Felix Castillo, Andres Nieves, Jr., Roque Melo-Polanco, Albert Williams, David Griffith, Antonio George, Andrea Freeman, Nessie Smithen-Francis. Cecil Coker Jr., Patrick Charles, Wilfred Canton, Gregory Bodley, Stacy Andrew, Reginald Williams, Franco Alvarez, Magdalene Williams. Horatius Popo, Vance Alex Pemberton, Peterson Massicot, Collins McNeal Matthew, Steve Javois, Richard Ince, Miguel Encarnacion, Desmond Emanuel, Omari Daley, Maurecio Commabatch, Jerry O'Reilly, Trent Williams, Dennis Antonio Ferdinand, Ricky Caleb, Kenneth Williams, Gilberto Camacho, Steadford Buffong, Clifford Emmanuel, Steve Tindeland, Malcolm Fabio, Jr., Miguel Figuergoa, Peter Cuffy, Wulston Paul, Josephat Edwards, Ovidio Aquino, Vincent Adams, Jr., Paul Stephen Henry, Ortiz Dwight Browne, Shern Maynard, Peter Cole, Joseph Oscar, Marcellus Phillip, Jeffery Nations, Syron Peter Blake, Vivian Lawrence, Bedi Huggins, Eustace Charles, Miguel Bermudez, Pius Aurelien, Dennis Jules, Simone Abramson, Peter George, Mitche Mathews, Benedict Austrie, and Dale Orrin Connor. For reasons unclear, "Wranda Dariah" would have moved from being the fifth-named plaintiff to the sixty-seventh named plaintiff. No one named "Rachel Davis" was listed in the proposed complaint.

[4] The ten individuals who sought to intervene on February 1, 2006 were Manuel Reyes, Sydney Sealey, Miguel Camacho, Junior Richards, Barry Hall, Brent Williams, Jonathan Santiago Gonzales, David Alexander, Hugh Evans, and Vaughn Nevin Warner.

¶7     Four days after the judge affirmed the magistrate's decision to not allow the amendment, the eighty-seven former co-workers—again purportedly acting through the *Stanley* Plaintiffs—filed a motion, on April 8, 2008, to certify the judge's April 4, 2008 memorandum opinion and order to the United States Court of Appeals for the Third Circuit or, in the alternative, to certify a class only on the Plant Closing Act claim as permitted by Rule 23(c)(4) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be maintained as a class action with respect to particular issues."). After an unopposed extension of time, Defendants responded in opposition in June 2008. In particular, St. Croix Basic argued that certification for appeal and of a class should be denied because "[t]he 87 new names are primarily bargaining unit employees who are already covered in the class action suit, *Randy Baptiste, et al. v. St. Croix Basic Services, Inc.,* Superior Court of the Virgin Islands, Civil No. SX-05-CV-42 for Plant Closing matters." (Def. St. Croix Basic Servs., Inc.'s Obj. [sic] to Pls.' Mot. for Cert. 2, ECF No. 161, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.,* Case No. 1:03-cv-00055 (D.V.I. June 5. 2008).) By contrast the original five *Stanley* Plaintiffs "were all supervisors . . . ." *Id.* at 3. What's more, the *Stanley* Plaintiffs' assertion that the Third "Circuit requires 290 Plaintiffs to have a class. . . . is contra to *Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)." *Id.; accord Stewart,* 275 F.3d at 227-28 ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). St. Croix Basic further claimed that counsel for the *Stanley* Plaintiffs failed to disclose to the District Court that she did not represent the seventy-seven individuals. *See id.* ("Plaintiffs' attorney did not tell Judge Cannon that she did not represent the new group, but intended to solicit them." (citing Notice of Law Offices of Rohn & Cameron, LLC, *St. Croix Avis,* Wednesday, October 12, 2005, p. 10, *attached as* Ex. B).)[5]

¶8     In an October 31, 2008 Memorandum Opinion and Order, the District Court (Finch, J.) denied certifying the interlocutory appeal and a class. The District Court concluded that the March 4, 2008 Memorandum Opinion did "not involve a 'controlling question of law.' Plaintiffs simply disagree with the Court's finding of 'prejudice' and . . . attempt[] to manufacture a controlling question of law

---

[5] The notice states: "Were you a **ST. CROIX BASIC SERVICES, INC.** ("Basic") employee who worked for Basic for at least one (1) year and was employed within 6 months of its closing, and you want to be included in the Plant Closing Violation litigation? . . . **YOU MUST ACT NOW TO BE A PART OF THE LAWSUIT!!!!**"

by arguing that the Court misinterpreted the word 'prejudice.' This is nothing more than a disagreement with the Court's application of the governing standard." *Stanley III*, 2008 U.S. Dist. LEXIS 90024 at *8-9. The District Court also concluded that "certification for interlocutory appeal [wa]s improper because there is no difference of opinion as to the legal standard to be applied in considering motions to amend and which the Magistrate and this Court applied to Plaintiff's [sic] motion." *Id.* at *10-11.

¶9　　　In December 2008, the District Court referred *Stanley* to mediation and scheduled trial for May 2010. For reasons unclear from the record, *Stanley* was reassigned to another judge on July 22, 2009, who moved the trial date up to April 2010. As the parties prepared for trial, the *Stanley* Plaintiffs, on October 26, 2009, filed a motion to amend the complaint to correct a scrivener's error. Wranda Dariah and Rachel Davis were inadvertently "combined into one, Wranda Davis." (Pls.' Mot. to Amend Compl. 1, ECF No. 206, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, Case No. 1:03-cv-00055 (D.V.I. Oct. 26, 2009).) Defendants opposed, claiming prejudice and that the motion was another attempt to add more plaintiffs before discovery closed. St. Croix Basic, in particular, claimed undue delay because the December 29, 2005 motion to amend had corrected "Wranda Davis" to "Wranda Dariah." *Cf. supra*, note 3. The *Stanley* Plaintiffs never filed a reply and the District Court did not rule on the motion before the *Stanley* Plaintiffs filed notice, on April 1, 2010, that they had settled. In response, the Court, *sua sponte*, dismissed the case with prejudice on April 6, 2010.

¶10　　But then, on April 9, 2010, the *Stanley* Plaintiffs (really just Rachel Davis) filed a motion to reconsider, explaining that "the existing Plaintiffs have settled their case [but] there is still the issue of Plaintiff Rachel Davis." (Pls.' Mot to Recons. Dismissal of Action 1, ECF No. 286, *Stanley, et al. v. St. Croix Basic Servs., Inc.*, et al., Case No. 1:03-cv-00055 (D.V.I. Apr. 9, 2010).) Davis represented that "[t]he Defendants agreed to settle with Wranda Davis even though she was misnamed in the Complaint and settled with her in her correct name, Wranda Dariah. Defendants declined to settle as to Rachel Davis until a ruling on the Motion to Amend Complaint is entered." *Id.* Defendants jointly responded in opposition, rejecting

> Plaintiffs' suggestion that Defendants agreed to a partial settlement of this case, reserving for a future consideration claims by Rachel Davis . . . . Defendants settled this case in its entirety during mediation on April 1 and would not have entered into such a settlement on a piecemeal basis. There was no discussion during mediation that Defendants declined to settle as to Rachel Davis until there was a ruling on the

> motion to amend complaint; in fact, there was no discussion at all of Rachel Davis because she was not a plaintiff in this case. Nor did she attend the mediation.

(Defs.' Jt. Resp. Opposing Pls.' Mot to Recons. Dismissal of Action 1, ECF No. 287, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, Case No. 1:03-cv-00055 (D.V.I. Apr. 12, 2010).) The *Stanley* Plaintiffs' ignored Defendants' claims and instead argued that the District Court could "apply the established doctrine of *idem sonans* and allow the amendment to fix th[e] oversight." (Pls.' Reply to Defs' Jt. Resp., ECF No. 291, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, Case No. 1:03-cv-00055 (D.V.I. Apr. 28, 2010).[6]) The District Court (Savage, J.) scheduled a hearing to show cause why the *Stanley* Plaintiffs' motion should not be granted and, following the hearing, denied the motion in a May 28, 2010 Order.

¶11    On June 2, 2010, Rachel Davis filed a motion to recuse the judge presiding over *Stanley*, claiming bias toward her attorney. The recusal motion, which was consolidated with other cases, *cf. Wallace v. Kmart Corp.*, Civ. No. 02-0107, 2010 WL 4238847, *1 n.1 (D.V.I. Oct. 27, 2010); *Wallace v. Kmart Corp.*, 821 F. Supp. 2d 763 (D.V.I. 2011), and contempt proceedings against Lee J. Rohn, Esq., *see Wallace v. Kmart Corp.*, 57 V.I. 847 (3d Cir. 2012), are not relevant here. But what is relevant is that, while those recusal proceedings were underway, Rachel Davis also filed a notice in *Stanley* on June 10, 2010, claiming that she was a plaintiff and did not consent to the stipulated dismissal. She also filed another notice on June 11, 2010, of appeal to the Third Circuit, but under the caption *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.* In her notice, Davis specified the May 28, 2010 Order as the order being appealed. However, in her "Concise Summary of the Case," required by Third Circuit Local Appellate Rule 33.3, Davis stated that she was "assign[ing error] to the court's rulings on the 2005/2006 Motion to Amend to name individually the members of the putative class and to the Court's failure to rule on the 2009 motion to amend, as well as the Court's denial of Plaintiff[']s motion to reconsider dismissal of the complaint." (Appellant's Concise Case Summ. 2, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, No. 10-2771 (3d Cir. July 22, 2010).) Three months later, on October 20, 2010, the parties notified the Third Circuit that they had settled "[p]ursuant to the settlement reached through the Court's Appellate Mediation Program . . . ." (Stip. of Dismissal

---

[6] *Idem sonans* is "[a] legal doctrine preventing a variant spelling of a name in a document from voiding the document if the misspelling is pronounced the same way as the true spelling." *Black's Law Dictionary* 862 (10th ed. 2014). Black's Law Dictionary gives Gene and Jean as an example. *See id.*

Pursuant to Fed. R. App. 42(b), *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.,* No. 10-2771 (3d Cir. Oct. 20, 2010).) The stipulation was "between the parties . . . [to] the above captioned matter," *id.,* meaning *Errol Stanley, et al. v. St. Croix Basic Services, Inc., et al. See id.* The Clerk dismissed the appeal the same day.[7]

### B. *Juan Castillo, et al. v. St. Croix Basic Services, Inc., et al.*

¶12     Two-hundred and twenty-eight days after the District Court denied the *Stanley* Plaintiffs' certification motion—and 2,331 days after St. Croix Basic lost its contract with HOVENSA and fired its employees—Juan Castillo and the seventy-six other individuals who were not permitted to intervene in *Stanley* filed a complaint in the Superior Court of the Virgin Islands on June 18, 2009. Plaintiffs named the Basic Defendants and the Hess Defendants as defendants and sued them for wrongful discharge (Count I), breach of the duty of good faith and fair dealing (Count II), violation of the Virgin Islands Plant Closing Act (Count III), fraud (Count IV), illegal retaliation and obstruction of justice (Count V), and intentional infliction or negligent infliction of emotional distress (Count VI).[8] Each count is asserted against every Defendant, except Count IV. Only the Hess Defendants are alleged to have acted fraudulently.

¶13     HOVENSA and Hess appeared and stipulated with Plaintiffs for an extension of time to respond to the complaint, while the Basic Defendants appeared, answered the complaint, and moved for judgment on the pleadings on July 30, 2009. On August 26, 2009, Plaintiffs notified the Court that the Basic Defendants "ha[d] granted an extension of time up until September 2, 2009 for Plaintiff [sic] to respond to . . . [the] Motions for Judgment on the Pleadings." (Pls.' Notice to Ct. – Ext. of Time 1, filed Aug. 26, 2009.) Plaintiffs then filed their responses in opposition to the Basic Defendants' motion on September 2, 2009, the same day the Court (Ross, J.) approved the stipulation. HOVENSA responded to the complaint by moving on September 3, 2009, to dismiss for failure to state a claim for relief, which Hess joined on the same day.

¶14     Believing Plaintiffs had failed to respond, the Court, on September 8, 2009, granted the Basic Defendants' motions, entering judgment on the pleadings in favor of Basic Industries and St. Croix

---

[7] Rachel Davis later withdrew her motion to recuse the judge because she "settled her claims and her cause of action has been dismissed." (Pls.' Notice of Withdrawal, ECF No. 468, *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.,* Case No. 1:03-cv-00055 (D.V.I. Jan. 24, 2011).)

[8] Punitive damages was erroneously labeled as Count VII.

Basic. The orders were entered September 11, 2009. Plaintiffs filed a notice of appeal with the Supreme Court of the Virgin Islands on September 18, 2009. After an extension of time, Plaintiffs responded to the Hess Defendants' motion on September 28, 2009, attaching to their opposition several documents from *Stanley*, including the complaint, the December 29, 2005 motion to amend, the February 1, 2006 motion to add additional plaintiffs, the July 14, 2006 Order denying leave to amend, and the March 4, 2008 Memorandum Opinion and Order affirming the July 15, 2006 Order. The Hess Defendants replied jointly on November 13, 2009.

¶15 Even though the orders granting judgment to the Basic Defendants were on appeal, Plaintiffs filed a motion on December 22, 2009, to reconsider the September 8, 2009 Order, but only as to St. Croix Basic. That is, Plaintiffs' motion asked for reconsideration as to St. Croix Basic, neglecting to seek the same relief as to Basic Industries. The Basic Defendants jointly responded in opposition, however. And the Court, in a February 9, 2010 Order, granted the motion because "the Court [had] entered the September 8, 2009 Order without the benefit of Plaintiffs' Opposition . . . ." *Castillo v. St. Croix Basic Servs., Inc.*, No. SX-09-CV-299, 2010 V.I. LEXIS 141, *15 (V.I. Super. Ct. Feb. 9, 2010). "The delay was caused by the Clerk's Office; Plaintiffs were not at fault," the Court explained. *Id.* at *14. Accordingly, the Court vacated the September 8, 2009 Order that granted judgment in favor of St. Croix Basic and reinstated St. Croix Basic as a defendant. *See id.* at *16. Basic Industries was not reinstated.

¶16 Nonetheless, everyone, including Basic Industries, proceeded as if Basic Industries had been reinstated. Since the Superior Court had reconsidered its order, the Supreme Court dismissed the appeal and remanded the case. St. Croix Basic and Basic Industries jointly filed their reply to Plaintiffs' oppositions. By vacating the September 8, 2009 Order, the Court necessarily reinstated the motion for judgment on the pleadings, at least as to St. Croix Basic.

¶17 This case went dormant until August 18, 2015, when the Court, *sua sponte*, granted the parties leave to supplement their motion papers in light of *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (2014) (*per curiam*). Plaintiffs filed their supplemental brief on September 2, 2015. Two weeks later, HOVENSA filed a notice of bankruptcy, which stayed further proceedings against HOVENSA until October 25, 2018, when Plaintiffs filed notice that the bankruptcy court had lifted the stay in exchange for them agreeing to limit their damages to the amounts available under

HOVENSA's insurance policies. In the interim, the Court (Willocks, J.) issued a January 10, 2016 Memorandum Opinion and Order to notify Plaintiffs and the Basic Defendants that the Court would convert the motions for judgment on the pleadings to summary judgment motions. *See generally Castillo v. St. Croix Basic Servs., Inc.*, 67 V.I. 26 (Super. Ct. 2016). And since the parties had raised *American Pipe* tolling, *see id.* at 30-31, the Court granted the parties leave to "to present all the material pertinent to the motion for summary judgment . . . [and] to file a supplemental brief to address the issue of equitable tolling." *Id.* at 32. The Basic Defendants responded on January 22, 2016, by moving to stay further proceedings against them based on the automatic stay applicable to HOVENSA. Plaintiffs notified the Court that they did not object. Accordingly, the Court, on February 12, 2016, stayed this case as to all parties.

¶18     In an October 5, 2018 Order, entered November 7, 2018, the Presiding Judge of the Superior Court designated this case as complex based on the number of plaintiffs, transferred it to the Complex Litigation Division, and reassigned it to the undersigned judicial officer. After the order was signed, but before it was entered, Plaintiffs notified the Court that the stay had been lifted. Accordingly, this Court, on February 15, 2019, reinstated the prior briefing schedule stayed by the February 12, 2016 Order.

¶19     The Court scheduled a status conference for September 10, 2019. In advance of the status conference, the Court alerted the parties to the fact that the order granting judgment to Basic Industries had not been reinstated and further

> that the parties' briefing has focused on equitable tolling and whether statutes of limitations should be tolled while a class action is pending. This class action tolling doctrine stems from the decision of the Supreme Court of the United States in *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (19 74), and later cases decided in furtherance of *American Pipe*. However, the question raised here is more nuanced because *American Pipe* does not apply to state courts or, presumably, to territorial courts. While many state courts have agreed to follow *American Pipe* and toll the statute of limitations on individual actions while a class action is pending in state court, courts are divided over whether the same tolling should apply to a class action filed in federal court or filed in another state court. *See generally* David Bober, Comment, *Cross-jurisdictional Tolling: When and Whether a State Court Should Toll its Statute of Limitations Based on the Filing of a Class Action in Another Jurisdiction*, 32 Seton Hall L. Rev. 617 (2002). Courts refer to this doctrine as cross-jurisdictional class action tolling. Thus, the narrower question raised here is whether the Superior Court of the Virgin Islands should toll the statute of limitations while a class action is

pending in another jurisdiction, here the District Court of the Virgin Islands. (Order 2-3, entered Sept. 6, 2019.) The Court directed the parties to come prepared to address the status of Basic Industries and cross-jurisdictional class action tolling.

¶20    Plaintiffs, the Hess Defendants, and St. Croix Basic appeared at the status conference. Basic Industries did not. Yet, counsel for St. Croix Basic offered arguments against vacating the other September 8, 2009 Order. The parties also argued whether the Virgin Islands should recognize cross-jurisdictional class action tolling, with Plaintiffs arguing in favor of recognition, and the Hess Defendants and St. Croix Basic arguing against. The Court gave Plaintiffs a deadline to move to reinstate Basic Industries and the parties leave to submit citations to case law in writing and then took the matter under advisement.

¶21    Plaintiffs moved to vacate the September 8, 2009 Order on September 20, 2019. However, because the certificate of service showed that Plaintiffs had only served the Hess Defendants and Basic Industries, not St. Croix Basic, the Court cautioned "counsel that 'selective service' of court papers *will not be tolerated*," (Order 1, entered Oct. 23, 2019), and directed Plaintiffs to serve St. Croix Basic. Neither the Basic Defendants nor the Hess Defendants responded. In a January 27, 2020 Order, the Court vacated the other September 8, 2009 Order and reinstated Basic Industries as a defendant, finding no prejudice to Basic Industries since Basic Industries had assumed that the February 9, 2010 order had reinstated it as well as St. Croix Basic.

## II.    DISCUSSION

### A.  Whether to Recognize Cross-Jurisdictional Class Action Tolling?

¶22    "[S]tatutes of limitation embody important public policy considerations . . . ." *Dublin v. V.I. Tel. Corp.*, 15 V.I. 214, 232 (Terr. Ct. 1978) (citation omitted). They "are founded upon the general experience of mankind that claims which are valid are not usually allowed to remain neglected . . . ." *Id.* (citation omitted). And they "promote the peace and welfare of society, safeguard[ing] against fraud and oppression, and compel[ling] the settlement of claims within a reasonable period . . . while the evidence remains fresh in the memory of the witnesses." *Id.* (citation omitted). Unlike statutes of repose, which "stand[] as an unyielding barrier to a plaintiff's right of action[,]" *Wright v. Robinson*, 426 S.E.2d 870, 871 (Ga. 1993), statutes of limitation "are subject to equitable tolling, a doctrine that 'pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'"

*CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (citation omitted). "Statutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." *Id.; see also id.* at 8 ("The statute of repose limit is 'not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.' The repose provision is therefore equivalent to 'a cutoff,' in essence an 'absolute bar' on a defendant's temporal liability.'" (citations and ellipsis omitted)). Broadly speaking, statutes of limitation are remedial, while statutes of repose are substantive. *Cf. Harding v. K.C. Wall Prod., Inc.*, 831 P.2d 958, 967 (Kan. 1992) ("A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive."); *accord Gregory v. Flowers*, 290 N.E.2d 181, 186 (Ohio 1972) ("[S]tatutes of limitation are remedial or procedural in nature . . . ."). *Compare* 5 V.I.C. § 31 (statute of limitations), *with*, 5 V.I.C. § 32b(a) (statute of repose).

¶23    Since statutes of limitation are remedial in nature, they can be extended, *see* 5 V.I.C. § 36(a) (extended for two years from date insanity, imprisonment, or minority ends), tolled, *see Marsh-Monsanto v. Clarenbach*, 66 V.I. 366, 376 (2017), or even waived or forfeited if not asserted at the first opportunity. *Cf. Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536-37 (2015). The question here is whether the Virgin Islands should recognize another form of tolling, class action tolling. The Supreme Court of the Virgin Islands has not had an occasion yet to address class action tolling. *Cf. Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153, 187 (Super. Ct. 2015) ("Assuming *arguendo* that the Virgin Islands were to join the majority of jurisdictions and recognize the tolling of the statute of limitations for the time when a class action is pending . . . ."); *accord Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 337 (Super. Ct. 2018) (same). Accordingly, this is an issue of first impression.

¶24    "When confronted with an issue of Virgin Islands common law not settled by binding precedent, courts must engage in a three-factor analysis before applying a specific common law rule. *Kuykendall v. Hart*, 70 V.I. 528, 538-39 (Super. Ct. 2019) (brackets, quotation marks, and citations omitted). "Colloquially, this three-part analysis has become known as a *Banks* analysis." *Id.* at 539 (quotation marks and citation omitted). "The three factors to be considered in a *Banks* analysis are

'which common law rule Virgin Islands courts have applied in the past,' which 'rule has been adopted by a majority of courts of other jurisdictions; and then finally which common law rule is soundest for the Virgin Islands.'" *Id.* (quoting *Machado v. Yacht Haven U.S.V.I., L.L.C.,* 61 V.I. 373, 380 (2014) (brackets and ellipsis omitted)). "Of the three factors . . . the third is . . . the 'most important.'" *Id.* (brackets and citation omitted). Before turning to the *Banks* factors, the Court will first summarize class action tolling to frame the discussion.

¶25 "Intra-jurisdictional tolling, whereby the filing of a class action may toll the limitations period for claims by class members in the same jurisdiction during the pendency of the class action, was first recognized in *American Pipe* . . . ." *Rader v. Greenberg Traurig, Ltd. Liab. P'ship,* 352 P.3d 465, 467 (Ariz. Ct. App. 2015) (citation omitted). *American Pipe* involved a class action filed by the State of Utah in federal court eleven days before the statute of limitations ran. *See* 414 U.S. at 541. The district court concluded "that the suit could not be maintained as a class action." *Id.* at 542. "[E]ight days after entry of the order denying class action status . . . more than 60 towns, municipalities, and water districts in the State of Utah, all of which had been claimed as members of the original class, filed motions to intervene as plaintiffs . . . ." *Id.* at 543-44. The district court denied intervention, finding that the statute of limitations had run. *See id.* at 544. The United States Court of Appeals for the Ninth Circuit affirmed in part and reversed in part. *See id.* at 545 (citing *Utah v. Am. Pipe & Constr. Co.,* 473 F.2d 580 (9th Cir. 1973)). And the Supreme Court of the United States affirmed the Ninth Circuit's reversal. *See id.* at 561.

¶26 The Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. And its decision was grounded on "efficiency and economy of litigation . . . ." *Id.* "Rule 23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action," the Court explained. *Id.* at 552-53. Otherwise, "[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." *Id.* Instead, only after "the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility

with respect to it in order to profit from the eventual outcome of the case." *Id.* There is no unfairness to defendants, the Court reasoned, because

> when . . . a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment . . . the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554-55. And this necessary information is conveyed to the defendants "[w]ithin the period set by the statute of limitations . . . ." *Id.* at 555. Since Utah commenced the class action with 11 days remaining on the statute of limitations, and the former class members moved for leave to intervene 8 days after the order denied certification, the statute of limitation had not run. *See id.* at 561.

¶27 Nine years later, the United States Supreme Court rejected the "assert[ion] that the rule of *American Pipe* was limited to intervenors, and does not toll the statute of limitations for class members who file actions of their own." *Crown, Cork & Seal Co.,* 462 U.S. at 350 ("[W]e conclude that the holding of that case is not to be read so narrowly."). Instead, "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors." *Id.* (citation omitted). Any other conclusion would result in "a needless multiplicity of actions – precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* at 351. Justice Powell, joined by Justices Rehnquist and O'Connor, concurred, reiterating the concerns Justice Blackmun had raised in his concurrence in *American Pipe,* namely that *American Pipe* "'must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights.'" *Id.* at 354 (Powell, J., concurring) (quoting *Am. Pipe & Constr. Co.,* 414 U.S. at 561 (Blackmun, J., concurring)). "The tolling rule of *American Pipe* is a generous one, inviting abuse," he cautioned. *Id.* Accordingly, "when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the . . . court should . . . ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced." *Id.* at 355 (citation omitted).

¶28 With this background, the Court turns to the first *Banks* factor: the past practices of Virgin Islands courts. Unfortunately, other than *Abednego,* which simply noted that class action tolling was

unsettled in the Virgin Islands, *see* 63 V.I. at 187, no court has decided whether the Virgin Islands should recognize class action tolling. In fact, it does not appear that the Superior Court of the Virgin Islands, or the Territorial Court of the Virgin Islands before it,[9] has ever certified a class, at least not from the available case law. To be sure, class actions have been filed in the Superior Court. *See, e.g., Cornwall v. V.I. Indus. Maint. Corp.*, 2019 VI Super 117, ¶ 4 ("Cornwall and Clendenen filed a class action in the Territorial Court of the Virgin Islands . . . ."); *Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 313 (Super. Ct. 2018) ("[E]ight people commenced this action as a class action . . . ."). But most putative class actions were either removed to the District Court, *see, e.g., Hall v. Delta Air Lines, Inc.*, 340 F. Supp. 2d 596, 597 (D.V.I. 2004) ("Hall filed a class-action complaint in the Territorial Court against Delta . . . ."); *Abraham v. St. Croix Renaissance Group, LLLP*, 2020 VI Super 21, ¶ 2 ("*Henry* was filed in 1999 in the then-Territorial Court of the Virgin Islands as a class action and removed to the District Court of the Virgin Islands . . . ."), had the class allegations stricken, *cf. Goodwin v. Fawkes*, 67 V.I. 104, 121 (Super. Ct. 2016) (deeming "all references to a class action lawsuit abandoned . . . ."); *Pate v. Gov't of the V.I.*, 62 V.I. 271, 294 (Super. Ct. 2015) (striking class allegations because "any holding . . . will affect both Plaintiff *and* all ' . . . similarly situated' . . . ."), or certification denied. *See Baptiste v. St. Croix Basic Servs, Inc.*, SX-05-CV-042, 2007 V.I. LEXIS 38 (V.I. Super. Ct. Apr. 24, 2007) (denying class certification *sua sponte*). Some still await a ruling on whether a class can be certified. *Cf. Morton v. Mapp*, ST-16-MC-056, 2018 V.I. LEXIS 148 (V.I. Super. Ct. Apr. 4, 2018) (motion to amend complaint to assert a class action); *see also Cornwall*, 2019 VI Super 117 at ¶ 35 ("To date, a class has not been certified nor has a motion to certify a class, or to strike the class action allegations, been filed. Thus, seventeen years after this action was commenced, the class action aspect of this case remains in limbo."). Yet, even though putative class actions, later abandoned, denied, or withdrawn, have been filed in the Virgin Islands, no court has had occasion to address whether the statute of limitations should be tolled while a proposed class action was pending in the Superior Court. Thus, the first factor carries no weight here.

¶29    Regarding the second factor, under *American Pipe*, federal courts clearly must toll statutes of limitations while class actions are pending.[10] But territories and "states are free to fashion their own

---

[9] "Renamed the Superior Court of the Virgin Islands in 2006. All further references will be to the Superior Court of the Virgin Islands [except within quotations]." *Cornwall v. V.I. Indus. Maint. Corp.*, 2019 VI Super 117, ¶ 4 n.1.

[10] But not statutes of repose. *Cf. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) ("The 3-

class action tolling rules and are not bound by *American Pipe.*" *Stevens v. Novartis Pharm. Corp.*, 247 P.3d 244, 252 (Mont. 2010). Nonetheless, the majority of state and territorial courts to consider the question have followed *American Pipe. Accord Philip Morris USA, Inc. v. Christensen*, 905 A.2d 340, 354 (Md. 2006) ("The wide majority of states with class action rules similar to Fed. R. Civ. P. 23 have followed *American Pipe* and endorsed a class action tolling rule."), *overruled in part on other grounds by Mummert v. Alizadeh*, 77 A.3d 1049, 1062 (Md. 2013). The courts of last resort of Alabama, Alaska, Colorado, Connecticut, Hawai'i, Idaho, Illinois, Iowa, Maryland, Montana, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, New Jersey, Utah[11] all recognize intra-jurisdictional tolling as have

---

year limit is a period of repose inconsistent with tolling."). *See also Albano v. Shea Homes Ltd. P'ship*, 254 P.3d 360, 365 (Ariz. 2011) ("Courts elsewhere are divided on whether *American Pipe* tolling should apply to statutes of repose.").

[11] *First Baptist Church v. Citronelle-Mobile Gathering, Inc.*, 409 So. 2d 727, 728 (Ala. 1981) ("We hold that when the interests of putative class members may not be adequately protected by the class representative or by the judiciary, the statute of limitations is tolled from the date of commencement of the action until the date of denial of class certification."); *Nolan v. Sea Airmotive*, 627 P.2d 1035, 1042 (Alaska 1981) ("We find the high court's reasoning persuasive and hold that the filing of a class action under Civil Rule 23 ordinarily tolls the statute of limitations as to all members of the class, whether or not named in the complaint."); *Blaylock v. Shearson Lehman Bros.*, 954 S.W.2d 939, 941 (Ark. 1997) ("[T]he commencement of a class action tolls the running of the statute as to purported members of the class during the pendency of the litigation."); *Kuhn v. Dep't of Revenue*, 897 P.2d 792, 795 (Colo. 1995) ("The filing of a class action lawsuit tolls the limitations period as to all putative class members, even before the certification of the class."); *Grimes v. Hous. Auth.*, 698 A.2d 302, 306 (Conn. 1997) ("[W]e now adopt the rule set forth in *American Pipe & Construction Co.* with respect to the tolling of statute of limitations for the purported members of a class action."); *Levi v. Univ. of Haw.*, 679 P.2d 129, 132 (Haw. 1984) ("We therefore adopt the rule enunciated in *American Pipe* . . . and clarified in *Crown, Cork and Seal Co.* . . . which states that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of a class who would have been parties had the suit continued as a class action."); *Pope v. Intermountain Gas Co.*, 646 P.2d 988, 1010 (Idaho 1982); *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103 (Ill. 1998) ("This court subsequently adopted the *American Pipe* rule for class actions filed in Illinois state court." (citing *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 644 (Ill. 1977)); *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 180 (Iowa 1977) ("We hold claims of parties properly members of the class, who timely intervene in the proceedings below, shall be deemed brought, for limitation purposes, when the appropriate defendant was legally served in the original litigation." (citation omitted)); *Philip Morris USA, Inc.*, 905 A.2d 340, 355 (Md. 2006) ("We adopt the *American Pipe* class action tolling rule, and its extension in *Crown, Cork & Seal*, but with the understanding that the *American Pipe* tolling rule incorporates the discussion of notice as an additional requirement that must be met in order for a plaintiff or intervenor to claim the benefit of the rule."); *Stevens v. Novartis Pharm. Corp.*, 247 P.3d 244, 253 (Mont. 2010); *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002) ("We hold that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *Dewey v. State ex rel. State Firefighters Pension & Ret. Sys.*, 28 P.3d 539, 547 (Okla. 2001); *Bergquist v. Int'l Realty, Ltd.*, 537 P.2d 553, 561 (Ore. 1975) ("[W]e believe the general principles enunciated in *American Pipe and Construction Co. v. Utah, supra*, is the preferable rule to follow in this instance."); *Cunningham v. Ins. Co. of N. Am.*, 530 A.2d 407, 408 (Pa. 1987) ("It is well established that upon the filing of a class action, the statute of limitations is normally tolled for all putative plaintiffs in the class." (citing *Alessandro v. State Farm Mut. Auto Ins. Co.*, 409 A.2d 347, 350 n.9 (Pa. 1979)); *Rivera Castillo v. Mun. of San Juan*, 130 D.P.R. 683, 700-01 (1992); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 967 (N.J. Super. Ct. App. Div. 1999) ("We hold, therefore, that from the filing of a putative class action until the entry of an order denying class certification, the applicable statute of limitations will be tolled for the claim of a plaintiff who would be a member of the asserted class if the class were certified and whose identity was disclosed or readily ascertainable upon the filing of the class

intermediate appellate courts in Indiana, Michigan, New Jersey, North Carolina, and Texas.[12] Arizona, California, Massachusetts, Minnesota, and Tennessee have not taken a clear position.[13]

---

action or upon its amendment within the period of limitations or who shows that he has deferred filing an individual suit in reliance on the pendency of the class action, provided that the plaintiff's claim is substantially the same as a claim alleged by the putative class plaintiff."); *Am. Tierra Corp. v. City of W. Jordan*, 840 P.2d 757, 762 (Utah 1992) ("We now adopt the same rule as a matter of Utah law and hold that the commencement of a class action tolls the statute of limitation as to all putative class members who would have been parties had class certification been approved.").

[12] *Cf. Arnold v. Dirrim*, 398 N.E.2d 426, 440 (Ind. Ct. App. 1979); *see Warren Consol. Sch. v. W R Grace & Co.*, 518 N.W.2d 508, 511 (Mich. Ct. App. 1994) ("Where class certification is later denied, the commencement of a class action suspends the applicable period of limitation with respect to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 967 (N.J. Super. Ct. App. Div. 1999) ("We hold, therefore, that from the filing of a putative class action until the entry of an order denying class certification, the applicable statute of limitations will be tolled for the claim of a plaintiff who would be a member of the asserted class if the class were certified and whose identity was disclosed or readily ascertainable upon the filing of the class action or upon its amendment within the period of limitations or who shows that he has deferred filing an individual suit in reliance on the pendency of the class action, provided that the plaintiff's claim is substantially the same as a claim alleged by the putative class plaintiff."); *Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte*, 552 S.E.2d 655, 661 (N.C. Ct. App. 2001) ("We therefore hold that the statutes of limitations on claims raised in a class action complaint are tolled as to all putative members of the class from the filing of the complaint until a denial of class action certification by the trial court, as per *American Pipe* and *Crown, Cork*."); *Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App. 1987) ("We hold that even though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as all purported members of the class. Thus, the right to pursue an individual cause of action is not foreclosed by decertification of the class. Any time remaining on the statute of limitations of the unnamed property owners' individual cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified.").

[13] *See Albano v. Shea Homes Ltd. P'ship*, 254 P.3d 360, 364 (Ariz. 2011) ("We assume without deciding that the filing of a class action in Arizona tolls the applicable statute of limitations for non-named class members until class certification is denied."); *see also Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 933-38 (Cal. 1988) (recognizing the persuasive import of *American Pipe* but finding class action tolling unavailable under the facts of the case). *But see Becker v. McMillin Constr. Co.*, 277 Cal. Rptr. 491, 496 (Ct. App. 1991) ("We find it is possible for some prior class actions based on tort, particularly property damage cases, to provide adequate notice to a defendant so that tolling is proper, even where class certification had to be denied for lack of common questions."). *See Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 920 (5th Cir. 2019) ("The Florida Supreme Court has not decided whether a statute of limitations is tolled during a putative class action."). *But see Gaff v. R. J. Reynolds Tobacco Co.*, 129 So. 3d 1142, 1145 (Fla. Dist. Ct. App. 2013) ("For purposes of decision, we assume the filing of the Engle class action complaint tolled the running of the statute of limitations as to all potential members of the class, including Ms. Gaff and her personal representative."). *See Mass. Elec. Co. v. Mass. Comm'n Against Discrimination*, 375 N.E.2d 1192, 1197 n.2 (Mass. 1978) (declining to decide whether to adopt *American Pipe* tolling); *Bonhiver v. Graff*, 248 N.W.2d 291, 300 (1976) (rejecting tolling and finding statute of limitations had run because federal court lacked subject matter jurisdiction). *Compare Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("'Tolling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system.'" (quoting *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 701 N.E.2d 1102, 1104 (Ill. 1998)). *But see Redwing v. Catholic Bis. hop for the Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) ("We have also declined to recognize the doctrine of cross-jurisdictional tolling."), *with Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 35 (Tenn. 2007) ("[E]ven if we were to adopt a class action tolling doctrine, we would hold that the plaintiffs are barred by the statutes of limitations on their claims because the previous plaintiffs failed to protect the other potential members of the class. The previous plaintiffs failed to satisfy the burden upon the party seeking certification to act promptly as practicable.").

Georgia appears to have conflicting authority.[14] "Kansas does not recognize class-action tolling, or any tolling during the pendency of an action. Instead, Kansas permits a putative class member to file a new complaint within six months after a denial of certification . . . ." *In re: LIBOR-Based Fin. Instrs. Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225, at *456 (S.D.N.Y. Aug. 4, 2015) (citing *Waltrip v. Sidwell Corp.*, 678 P.2d 128, 133 (Kan. 1984)). Missouri also does not recognize class action tolling. *See Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 184 (Mo. 2014) (*en banc*). And, "Virginia . . . does not recognize class actions." *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012). Louisiana recognizes class action tolling but by statute. *See Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1016 & n.4 (La. 2012). It must be excluded from the Court's consideration. *See In re: L.O.F.*, 62 V.I. 655, 661 n.6 (2015) (second *Banks* factor limited to "non-statutory law created by judicial precedent").

¶30     The vast majority of jurisdictions across the nation have followed *American Pipe*. Unlike Missouri, for example, the Virgin Islands Code does not "provide[] that a 'statute of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions.'" *Rolwing*, 437 S.W.3d at 184 (citation omitted). And Virgin Islands common law recognizes equitable tolling. *See Marsh-Monsanto v. Clarenbach*, 66 V.I. at 376 (citing *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 273 (2012)). Class action tolling is akin to equitable tolling. *Cf. Adedje v. Westat, Inc.*, 75 A.3d 401, 408 (Md. Spec. Ct. App. 2013) ("In a class action, the putative class representative has satisfied the prerequisites to [filing] suit *including filing within the applicable limitations period* . . . . In contrast, equitable tolling seeks to excuse *untimely* filing by an individual plaintiff. . . ." (quoting *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520, 531 (Ill. App. Ct. 1993)).

¶31     This Court agrees with the majority of courts and holds that the soundest rule for the Virgin Islands is to adopt class action tolling. Historically, class actions were not recognized at common law. *See generally Goodwin*, 67 V.I. at 114-15; *accord Bond v. Ann Arbor Sch. Dist.*, 171 N.W.2d 557, 561 (Mich. Ct. App. 1969) ("[C]lass actions . . . historically, were an invention of equity and had no application to actions at common law."), *aff'd in part and rev'd in part on other grounds*, 178 N.W.2d

---

[14] *Compare Bickerstaff v. SunTrust Bank*, 788 S.E.2d 787, 791 (Ga. 2016), *with State v. Private Truck Council*, 371 S.E.2d 378, 380-81 (Ga. 1988).

484 (Mich. 1970) (*per curiam*); *Felger v. First Fed. S. & L. Ass'n*, 3 Pa. D. & C. 3d 70, 72-73 (Ct. Common Pleas 1975) ("Historically, class actions were not permitted at common law. The class action device had its origin in equity . . . ."). The Virgin Islands Legislature has recognized class action suits in limited instances, such as "for violations of consumer rights." *Goodwin*, 67 V.I. at 121. Before the Supreme Court of the Virgin Islands promulgated Rule 23 of the Virgin Islands Rules of Civil Procedure, whether Virgin Islands common law should recognize class actions would have, itself, been subject to a *Banks* analysis. *See id.* But now that the Virgin Islands Supreme Court has promulgated a rule that allows class actions, and borrowed the Virgin Islands rule from the federal rule, federal case interpreting the federal rule is persuasive. *Cf. Smith v. Gov't of the V.I.*, 67 V.I. 797, 802 n.3 (2017). Although it is not binding, *see Ventura v. People*, 64 V.I. 589, 616 (2016), this Court agrees with the reasoning of the Supreme Court of the United States:

> a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations. Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims. And a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Crown, Cork & Seal Co.*, 462 U.S. at 352-53 (citations omitted). As the Supreme Court of Alaska explained, summarizing the United States Supreme Court's reasoning in *American Pipe*:

> [P]rior to the 1966 revision of the federal rule, when a suit was brought as a class action based on common questions of law or fact among the members of the class "it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted." Those who accepted the invitation gained or lost by any judgment, but absent parties were not affected. Under this regime it was uncertain whether the statute of limitations was tolled for the members of the class when the class action was filed, as some decisions looked to the representative nature of the action to allow tolling, and others viewed the action as a joinder device and required each individual to satisfy the statute of limitations.

*Nolan v. Sea Airmotive*, 627 P.2d 1035, 1041 (Alaska 1981) (citations and footnotes omitted).

¶32    Once the United States Supreme Court amended Rule 23, and state courts adopted similar rules to permit class actions, the prior uncertainty diminished. "Rule 23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action." *American Pipe & Constr. Co.*, 414 U.S. at 551-52. In fact, individual members of a class have no "duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case" "until the existence and limits of the class have been established and notice of membership has been sent . . . [to the] class member[s]." *Id.* at 552. But once a class has been certified and notice is sent,

> potential class members retain the option to participate in or withdraw from . . . . Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.

*Id.* at 549. If a class is not certified, then former class members who seek to file their own lawsuits

> must show . . . that the class action complaint notified the defendants of "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs." . . . [I]n order to claim the benefits of class action tolling, the individual suit must "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," and that "claims as to which the defendant was not fairly placed on notice by the class suit are not protected . . . ."

*Phillip Morris USA*, 905 A.2d at 357 (citations and brackets omitted).

¶33    "[C]lass action tolling is not without its limits." *One Star v. Sisters of St. Francis*, 752 N.W.2d 668, 680 (S.D. 2008). "Nonnamed class members are . . . parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). And "'a putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim or move to intervene in the existing suit[.]'" *China Agritech*, 138 S. Ct. at 1804 (brackets omitted) (quoting *Smith v. Bayer Corp.*, 564 U. S. 299, 313-314 n. 10 (2011)). But the named plaintiffs cannot benefit from class action tolling. *Cf. Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 612 (3d Cir. 2018) ("Allowing named plaintiffs to file new individual claims outside the statute of limitations—when they can instead pursue their original, timely filed individual claims in the first case, after class certification has been denied—serves no legitimate purpose."). And "class action tolling does not apply when the defendant is not named in the class

action." *One Star*, 752 N.W.2d at 680.

¶34    Although this Court holds that recognizing intra-jurisdictional class action tolling is the soundest rule for the Virgin Islands, the question still remains whether to likewise recognize cross-jurisdictional class action tolling. Courts in the Virgin Islands have not addressed this question. Thus, the first *Banks* factor is not instructive. And courts in other jurisdictions are divided. Delaware, Hawai'i, Ohio, and Montana have recognized cross-jurisdictional class action tolling.[15] Maryland, New York, Nevada, and Puerto Rico have not addressed it.[16] Illinois, Tennessee, Louisiana, and Virginia reject cross-jurisdictional class action tolling.[17] And intermediate appellate courts in Pennsylvania and Kentucky also rejected the doctrine,[18] while intermediate appellate courts in New Jersey, Michigan, and Missouri have adopted it.[19] A Texas appellate court and the Supreme Court of

---

[15] *See Blanco*, 67 A.3d at 395 ("We are persuaded by the reasoning of other state supreme courts that have recognized the doctrine of cross-jurisdictional class action tolling."); *Patrickson v. Dole Food Co.*, 368 P.3d 959, 960 (Haw. 2015) ("We hold that the filing of a putative class action in another jurisdiction does toll the statute of limitations in this state, as such 'cross-jurisdictional tolling' supports a primary purpose of class action litigation, which is to avoid a multiplicity of suits."); *Stevens v. Novartis Pharm. Corp.*, 247 P.3d 244, 255 (Mont. 2010) ("We are convinced that the decisions adopting cross-jurisdictional tolling more effectively balance the considerations at issue."); *Vaccariello*, 763 N.E.2d at 163 ("We hold that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").

[16] *See Philip Morris USA, Inc.*, 905 A.2d at 356 n.9 ("We express no opinion as to whether we would recognize the doctrine of cross-jurisdictional class action tolling . . . ."); *cf. Chavez v. Occidental Chem. Corp.*, 933 F.3d 186, 201 (2d Cir. 2019) (certifying question to New York Court of Appeals), *certification accepted*, 130 N.E.3d 1110 (N.Y. 2019); *Archon Corp. v. Eighth Judicial Dist. Ct.*, 407 P.3d 702, 709-10 (Nev. 2017). *Cf. In re: Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 811 (E.D. La. 2007) ("Although Puerto Rico does recognize class action tolling, Puerto Rico has not explicitly adopted cross-jurisdictional tolling." (citation omitted)).

[17] *See Portwood*, 701 N.E.2d at 1104 ("Tolling the statute of limitations for purported class members who file individual suits within the same court system after class status is denied therefore serves to reduce the total number of filings within that system."); *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022 ("We believe the rationale of the courts rejecting "cross-jurisdictional tolling" is the one most consistent with our interpretation of the provisions of Louisiana's tolling statute . . . ."); *Casey*, 722 S.E.2d at 845 ("[T]here is no authority in Virginia jurisprudence for the equitable tolling of a statute of limitations based upon the pendency of a putative class action in another jurisdiction."); *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("[W]e decline to adopt the doctrine of cross-jurisdictional tolling in Tennessee.").

[18] *See Ravitch v. Price-Waterhouse*, 793 A.2d 939, 945 (Pa. Super. 2002) ("[W]e hold that the filing of a class action in another state does not toll the statute of limitations as to a subsequent action filed in Pennsylvania's state court system."); *Easterly v. Metro. Life Ins. Co.*, Nos. 2006-CA-001580-MR, 2006-CA-001687-MR, 2009 Ky. App. Unpub. LEXIS 428, *18 (Ky. Ct. App. Feb. 13, 2009) ("We thus conclude the tolling of federal claims as contemplated under *American Pipe* does not apply cross-jurisdictionally to toll state law claims in the Commonwealth.").

[19] *See Staub*, 726 A.2d at 967; *see also id.* at 961 (noting that class action was pending in federal court); *Lee v. Grand Rapids Bd. of Educ.*, 384 N.W.2d 165, 168 (Mich. Ct. App. 1986) ("This Court has previously held that the filing of a federal lawsuit tolls the operation of the statute of limitations. We conclude, for the reasons set forth above, that the federal district court action tolled the operation of the statute of limitations . . . ." (citation omitted)); *Hyatt Corp. v. Occidental*

South Dakota both declined to recognize cross-jurisdictional class action tolling but based on the specifics of the cases before them.[20] And an Arizona intermediate appellate court concluded that its "Legislature [had] adopted a form of cross-jurisdictional tolling . . . ." *Rader*, 352 P.3d at 471.

¶35    Regarding the third *Banks* factor, "the sheer volume of case law addressing this issue . . . calls for a more rigorous analysis than simply tallying holdings . . . ." *Doe v. Hartford Roman Catholic Diocesan Corp.*, 119 A.3d 462, 508–09 (Conn. 2015). "The majority of states have not yet had occasion to address the issue directly and the states that have considered cross-jurisdictional tolling have been split in their acceptance of the doctrine and the rationale for their decisions." *Patterson v. Novartis Pharm. Corp.*, 909 F. Supp. 2d 116, 122 (D.R.I. 2012) (quoting *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1021-22 (La. 2012)). Thus, the reasons for and against recognizing cross-jurisdictional class action tolling is what must be considered. *Accord Doe*, 119 A.3d at 509 ("[D]etermine which sister state courts' approaches provide a genuinely persuasive framework for resolving this . . . question.").

¶36    Those jurisdictions who refuse to toll the statute of limitations while a putative class action is pending in another jurisdiction, whether federal, state, or territorial, do so based on concerns over judicial economy. *Cf. Blanco*, 67 A.3d at 397-98 ("While the courts' reasons for not adopting cross-jurisdictional tolling vary, the most common concern expressed is that of opening the jurisdiction to a floodgate of litigation."). The Supreme Court of Illinois worried that "[t]olling a state statute of limitations . . . may actually increase the burden on that state's court system, because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule." *Portwood*, 701 N.E.2d at 1104. The court reasoned that "[u]nless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run." *Id.* The

---

*Fire & Cas. Co.*, 801 S.W.2d 382, 389 (Mo. Ct. App. 1990) ("These class action complaints tolled the statute of limitations on behalf of all putative rescuers, including those who subsequently filed their own actions or settled individual claims during the pendency of the Jacob class action.").

[20] *See Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 758 (Tex. App. 1995); *see also One Star*, 752 N.W.2d at 681 ("Because Plaintiffs have failed to cite any authority supporting class action tolling in cases involving different defendants, different claims, in different jurisdictions, this Court declines to adopt Plaintiffs' theory of cross-jurisdictional tolling during the *Zephier* class action litigation.").

Supreme Court of Tennessee was likewise concerned over "the risk that Tennessee courts would become a clearinghouse for cases that are barred in the jurisdictions in which they otherwise would have been brought." *Maestas,* 33 S.W.3d at 808. Like Illinois, the Tennessee Supreme Court expressed concern that "[l]itigants who ordinarily would have filed in other states' courts would file in Tennessee solely because our cross-jurisdictional tolling doctrine would have effectively created an overly generous statute of limitations." *Id.* And the United States Court of Appeals for the Fourth Circuit, predicting what the Supreme Court of Virginia would hold, reasoned that "Virginia simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state." *Wade v. Danek Med., Inc.,* 182 F.3d 281, 287 (4th Cir. 1999). The Fourth Circuit Court of Appeals also agreed with Illinois and Tennessee about the "flood of subsequent filings once a class action in another forum is dismissed . . . ." *Id.* But perhaps most importantly, the court reasoned that "if Virginia were to allow cross-jurisdictional tolling, it would render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions." *Id.*

¶37    Those jurisdictions that recognize cross-jurisdictional class action tolling are also concerned with judicial economy. For example, the New Jersey Superior Court, Appellate Division, observed in *Staub* that

> [t]he efficient utilization of judicial resources and the reduction of costs to individual litigants are among the principal purposes of both state and federal class action rules. A tolling rule which permits individual claimants to refrain from filing suit pending a decision on certification of a class action that would encompass their claims is almost indispensable to accomplish those purposes. In fact, a contrary rule would reward defendants who caused a court to delay decision of class action certification until the statute of limitations had run against any potential plaintiffs who had "discovered" their cause of action as a result of publicity . . . .

*Staub,* 726 A.2d at 966 (citations omitted). The Supreme Court of Delaware echoed similar concerns, noting that "the potential for litigation in Delaware exists whether or not cross-jurisdictional tolling is recognized. If we do not recognize cross-jurisdictional tolling, putative class members will still be incentivized," the court reasoned, "to file placeholder actions in Delaware to protect their interests in the event that the putative class is not certified." *Blanco,* 67 A.3d at 397.

¶38    The Delaware Supreme Court relied on the Supreme Court of Montana, *see id.* (citing *Stevens*, 247 P.3d at 256), which found the potential for "a greater burden on the court system . . . by not adopting the rule, as plaintiffs would be required to file protective individual suits in Montana courts to avoid limitations defenses, while otherwise relying on a pending class action suit filed elsewhere." *Stevens*, 247, P.3d at 256. Incentivizing more lawsuits, the court explained, "directly conflicts with the rationale underlying the class action tolling rule: to promote judicial economy by encouraging individual plaintiffs to defer to class action suits to protect their claims." *Id.*; *accord Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002) ("Our holding today merely allows a plaintiff who could have filed suit in Ohio irrespective of the class action filed in federal court in Pennsylvania to rely on that class action to protect her rights in Ohio. To do otherwise would encourage all potential plaintiffs in Ohio who might be part of a class that is seeking certification in a federal class action to file suit individually in Ohio courts to preserve their Ohio claims should the class certification be denied. The resulting multiplicity of filings would defeat the purpose of class actions.").

¶39    The concerns the *Wade* court raised regarding the efficiency of other jurisdictions is persuasive. Here, Plaintiffs lost their jobs on January 31, 2003. Yet, this case was not filed until June 18, 2009, six-and-a-half years later. And the only reason this case was filed is because the District Court of the Virgin Islands declined to allow the former class members in *Stanley* to intervene. Litigation on that question was arguably not resolved until October 20, 2010, when the *Stanley* Plaintiffs notified the Third Circuit that they had settled, a year-and-a-half *after* this case was commenced. Other cases present similar concerns about delay. *Cf. Abednego*, 63 V.I. at 160 ("Although this action was initially filed in the Superior Court of the Virgin Islands in 2009, litigation over the claims at issue actually began ten years earlier in the District Court of the Virgin Islands when a class was certified in 1999 . . . ."). Cases delayed years or even decades in another jurisdiction burden the court with the litigation of stale claims, long after memories fade, witnesses relocate or pass away, and evidence is lost, all which the statute of limitations is designed to avoid. *Cf. Dublin*, 15 V.I. at 233 ("The longer the delay of the plaintiff in the institution of his suit, the greater the likelihood that the evidence will be lost, memories blurred, or the witnesses become altogether unavailable. Potential defendants, therefore, rightly are protected from the fear of litigation by the

requirement that the injured party act with due diligence.").

¶40    But the same reasons that support adopting intra-jurisdictional class action tolling also support adopting cross-jurisdictional class action tolling. The Illinois Supreme Court disagreed, noting that "[t]olling the statute of limitations . . . is sound policy when both actions are brought in the same court system. . . . [Otherwise], failing to suspend the limitation period would burden the subject court system with the protective filings described." *Portwood*, 701 N.E.2d at 1104. But there is no reason to not require protective filings simply because the putative class action was filed in same jurisdiction, particularly when a State or Territory has multiple judicial districts. Likewise, the concerns the *Wade* court had raised about the efficiency of the court presiding over the putative class action, while valid, would also apply when the putative class action is filed in the same court system. "'Within every judicial system in the United States,' including the Virgin Islands, 'courts are arranged in a pyramid,' with 'trial courts at its base' and 'a single court at the top with ultimate authority.'" *Connor*, 60 V.I. at 604 (citation omitted). Trial court judges do not have superintendent authority over each other. Thus, whether the delay occurs in another jurisdiction or the same jurisdiction, the result is the same: a different judicial officer "inherits" one or more cases after some length of time another judicial officer declined to certify a class. "'A class action tolling rule makes sense. Without one, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated.'" *Blanco*, 67 A.3d at 395 n.10 (citation omitted). Accordingly, this Court also holds that the soundest rule for the Virgin Islands is to recognize cross-jurisdictional class action tolling.

## B. When Does Cross-Jurisdiction Class Action Tolling End?

¶41    The remaining question to answer is more difficult because of the specifics of this case. St. Croix Basic lost its contract and fired its employees on February 1, 2003. Plaintiffs did not file their complaint until June 18, 2009. A total of 2329 days—or 6 years, 4 months, and 17 days—passed in between. If the *Stanley* Plaintiffs had not filed a class action in District Court on March 31, 2003, 58 days after they were fired, the statute of limitation would have run. But they did, and it tolled the statute of limitations. The question is when did it resume? The answer? It depends.

¶42    First, to put the question in context: "When a court states that a time period is tolled, it means

that it abates, or stops the running of, the limitations period in question." *Bright v. United States*, 603 F.3d 1273, 1284 n.5 (Fed. Cir. 2010) (citing *Black's Law Dictionary* 1625 (9th ed. 2009)). Thus, filing a class action does not start the clock, it stops the clock.

> Extra time is not accumulating, but rather a time period is stopped, tolled, suspended. Tolling means "that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped."

*Abernethy v. United States*, 108 Fed. Cl. 183, 187 (2012) (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991)).

¶43     While courts often favor "a clear and unambiguous rule," *Marquinez*, 183 A.3d at 711, they rarely adopt one. The Supreme Court of Hawai'i, for example, held that "the pendency of a class action in another jurisdiction operates to toll our state's applicable statute(s) of limitations until the court in our sister jurisdiction issues an order expressly denying a motion for class certification (or expressly denying the last such motion, if there is more than one motion)." *Patrickson v. Dole Food Co.*, 368 P.3d 959, 971 (Haw. 2015). The Supreme Court of Delaware narrowed its version of the same rule, holding that "cross-jurisdictional class action tolling ends only when a sister *trial court* has clearly, unambiguously, and finally denied class action status." *Id.* at 712 (emphasis added).

¶44     Hawai'i's rule appears to contemplate that "the [trial] court may reconsider its order denying class certification, or that an appellate court may later reverse it . . . ." *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998) (*en banc*). Hawai'i's rule also contemplates more than one motion to certify a class. Unlike Delaware's rule, Hawai'i's rule does not appear to be limited to a decision of the trial court. And some courts extend class action tolling while an appeal is pending.[21] *Cf. Am. Tierra Corp. v. W. Jordan*, 840 P.2d 757, 762 (Utah 1992) ("[W]hen a proper appeal of a class

---

[21] Rachel Davis had appealed to the Third Circuit from the May 28, 2010 order refusing to set aside the stipulated dismissal. Recall that Wranda Dariah and Rachel Davis were merged by scrivener's error into "Wranda Davis." Defendants had settled with Dariah, not Davis, and Davis objected. In her notice of appeal, Davis designated the order refusing to set aside the dismissal. Yet, in the concise statement of the case, she also designated the orders denying leave to amend (really to intervene). However, the concise summary of the case does not operate to amend the notice of appeal, however, or expand the errors to be considered on appeal. *See Union Pac. R.R. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 126 n.8 (3d Cir. 2002); *see also Fishman Org. v. Frick Transfer, Inc.*, 564 F. App'x 649, 652 n.4 (3d Cir. 2014) ("Local Rule 33.3 requires, among other things, a Concise Summary of the Case for purposes of facilitating mediation and does not bear on the preservation of substantive claims."); *accord OR v. Hunter*, 515 F. App'x 85, 86 n.1 (3d Cir. 2013) ("[T]he 'concise summary of the case' is not a notice of appeal . . . ."). Since the Third Circuit would not have had jurisdiction over the orders denying leave to intervene, it is excluded from the Court's analysis.

certification decision is taken, the tolling benefit continues on behalf of all members of the class until the class issue is finally determined by the decision on appeal."). And there may be benefit to such a rule. If the appellate court reverses the denial of class certification after the former class member went ahead and filed their own lawsuits, the result would be "precisely the multiplicity of activity which Rule 23 was designed to avoid . . . ." *Am. Pipe & Constr. Co.*, 414 U.S. at 551; *accord Miller v. Fed. Kemper Ins. Co.*, 508 A.2d 1222, 1231 (Pa. Super. Ct. 1986) ("To accept the conclusion that the limitations period is not tolled but continues to run during the pendency of the class representative's appeal would be to encourage each purported class member either to file an individual action or move to intervene in order to avoid extinguishment of his or her right of recovery during the appeal period. This is precisely the multiplicity of activity that class action rules were designed to avoid." (citation omitted)).

¶45  The United States Courts of Appeal for the Second and Eleventh Circuits refuse to extend class action tolling to include the time pending reconsideration or appeal. *Cf. Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117-18 (2d Cir. 2013) ("Further, even where the plaintiffs seek reconsideration or appeal, ostensibly representing the rights of non-named plaintiffs, reliance is not objectively reasonable. As the court in *Armstrong* identified, reconsideration and appeal rarely result in a reversal of the district court decision."). And the United States Courts of Appeal for the Third and Seventh Circuits do not require the filing of a motion. *Leyse v. Bank of Am., Nat'l Ass'n*, 538 F. App'x 156, 161-62 (3d Cir. 2013) ("As the Court of Appeals for the Seventh Circuit has recently explained, 'it does not matter, under federal law, whether the first suit's status as a would-be class action ends by choice of the plaintiff (who may abandon the quest to represent a class or bow out altogether) or by choice of the judge.'" (ellipsis omitted) (quoting *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011)). Instead, both courts conclude that the "'goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, *or any other fashion*—is irrelevant.'" *Id.* at 162 (emphasis added) (quoting *Sawyer*, 642 F.3d at 562).

¶46  Clearly, courts take different approaches when tolling statutes of limitations for class actions. *See also Chavez v. Occidental Chem. Corp.*, 933 F.3d 186, 199 (2d Cir. 2019) ("Existing case law sheds

little light on whether a non-merits denial of class status necessarily terminates tolling. Few courts have addressed the issue, and there is no consensus among those that have."). The least complicated approach is to restart the statute of limitations "lock once a final judgment is entered and appeals are exhausted. Understandably, this might force defendants to defend new lawsuits years after class allegations were denied or abandoned. *Cf. Stone Container Corp. v. United States*, 229 F.3d 1345, 1355 (Fed. Cir. 2000) ("Limitations periods could be tolled for years. During these long delays, evidence could be lost, memories could fade, and witnesses could disappear. Defendants would have no way of knowing how many individual claims would exist if class certification were denied."). But class action tolling only applies because "the defendant is put on notice of the substance and nature of the claims against it." *Vaccariello*, 763 N.E.2d at 163. *Contra One Star*, 752 N.W.2d at 681 (class action tolling inapplicable for "cases involving different defendants, different claims, in different jurisdictions."). Here, for example, the Hess Defendants and the Basic Defendants clearly were on notice of the *Castillo* Plaintiffs because everyone named in this lawsuit was proposed to be added to *Stanley*. And the claims in *Castillo* are identical to those in *Stanley*, except that the *Castillo* Plaintiffs abandoned their federal claims. *Cf. Stanley III*, 2008 U.S. Dist. LEXIS 90024 at *2 ("Plaintiffs' Complaint included numerous counts: (1) wrongful discharge; (2) breach of a duty of good faith and fair dealing; (3) violations of the Virgin Islands Plant Closing Act and the Worker Adjustment Retraining Notification Act; (4) fraud; (5) illegal retaliation and obstruction of justice; and (6) intentional and negligent infliction of emotional distress."). Thus, Defendants had notice of the claims asserted in this case.

¶47     But this Court is not comfortable adopting such a broad, open-ended rule. Instead, this Court will employ a traditional tolling approach. *Cf. Pichierri v. Crowley*, 59 V.I. 973, 979 (2013) (equitable tolling tests can be "highly fact specific."). However, this case presents another hurdle because the *Stanley* Plaintiffs, on the record on September 29, 2005, abandoned the class action and instead filed a motion, on December 29, 2005, for leave to amend their complaint to add the individual *Castillo* plaintiffs. Although the motion, in name, was filed by the *Stanley* Plaintiffs, in truth it was filed by the former class members. And the motion truly did not seek to amend the complaint. Instead, it sought leave to add additional plaintiffs or, in other words, to intervene. (*See* Pls.' Mot. to Amend. Compl. 1 ("Plaintiffs are requesting to amend the Complaint *only to individually name parties* not

listed in the First Amended Complaint but whom Defendants had notice of as they were *part of the proposed class.*" (emphasis added)), *Stanley, et al. v. St. Croix Basic Servs., Inc., et al.*, No. 03-cv-055 (D.V.I. Dec. 29, 2005), *attached as* Ex. 4 to Pls.' Mem. in Opp'n to Hess Defs.' Mots. to Dismiss for Failure to State a Claim, filed Sept. 28, 2009.) The magistrate judge construed the motion according to its caption—as a motion for leave to amend—and denied it as untimely. *Cf. Stanley II*, 2008 U.S. Dist. LEXIS 107702 at *11 ("Citing undue delay and prejudice, the Magistrate correctly applied the law and appropriately denied Plaintiffs' Motion to Amend their Complaint."). *But see Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988) ("[T]he function of the motion, not the caption, dictates which Rule applies . . . ."). This raises two potential problems.

¶48    First, a motion to intervene should not be titled a motion to amend. *Cf. Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 206-09 (4th Cir. 2006) (construing motion to amend filed by nonparties after class claims were abandoned as motion for leave to intervene). "[U]nnamed class members are not 'parties' . . . ." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012). And nonparties cannot amend the pleadings. Notwithstanding the title, the motion was for leave to intervene. Had the *Castillo* Plaintiffs actually filed a motion for leave to intervene, rather than having the *Stanley* Plaintiffs pretend to seek leave to amend the complaint to add additional people, confusion and further delay would have been avoided. In federal court, "when an order prevents a putative intervenor from becoming a party in any respect, the order is subject to immediate review." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377, 107 (1987). Thus, the *Castillo* Plaintiffs could have appealed the denial in 2006.

¶49    Second, and more importantly, the Third Circuit has not addressed whether federal magistrate judges have authority to rule on motions to intervene, particularly motions filed by former class members after denial or abandonment of a class. *Cf. Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198-99 (3d Cir. 2014) ("Braverman points out that the Third Circuit has not determined whether a motion to intervene as of right in a class action proceeding is dispositive, and he invites us to 'adopt the position' of the Second and Eleventh Circuits, claiming they say it is." (citation omitted)). Former class members have a right to intervene once a case will not proceed as a class action. *See Crown, Cork & Seal Co.*, 462 U.S. at 354 ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class

certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."). Since deciding whether a former class member can intervene may be dispositive, several federal courts have held that magistrate judges may not decide the motion, but instead must recommend a decision to the judge. *Cf. N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) ("Absent the 'intervenors' consent, the magistrate judge was not authorized to enter a final order denying intervention; her decision on the motion is deemed to be a report and recommendation to the district judge."). *But cf. Los Cangris v. UMG Recordings, Inc.*, No. 10-1349 (JAG), 2012 U.S. Dist. LEXIS 75154, at *17-18 n.5 (D.P.R. May 23, 2012) ("There is a split of authority as to whether a motion to intervene is a non-dispositive matter . . . ." (collecting cases)). Again, the Third Circuit had not addressed the issue in 2006 when the magistrate judge denied the December 29, 2005 motion. *But cf. Dewey*, 558 F. App'x at 198 n.6.

¶50      If the motion filed by the *Stanley* Plaintiffs to amend were construed as a motion filed by the *Castillo* Plaintiffs to intervene, and if the magistrate judge's July 14, 2006 Order were construed as recommendation to the district court judge to deny the motion, then tolling would not have ended until March 4, 2008, when the District Court issued its decision, affirming (or adopting) the magistrate judge's ruling. *See Stanley II*, 2008 U.S. Dist. LEXIS 107702 at *11 ("For the reasons set forth herein, the Magistrate's Order Regarding Plaintiffs' Motion to Amend their Complaint is **AFFIRMED.**"). Employing a traditional tolling approach, the statute of limitations would have commenced on February 1, 2003 (employees fired) and continued until March 31, 2008 (*Stanley* filed), 58 days, resumed on September 29, 2005 (class abandoned) and continued until December 29, 2005 (amend/intervene motion), 91 days, and resumed on March 4, 2008 (affirmance/adoption of decision/recommendation) and continued until June 18, 2009 (*Castillo* filed), 471 days.[22] Under this approach, 620 days would be subtracted from the full limitations period. And since the shortest limitations period here is 2 years, or 730 days, the *Castillo* Plaintiffs filed within the statutes of limitations, with an additional 110 days to spare.

¶51      But there's yet another concern. Clearly, "it is 'the *commencement* of a class action that

---

[22] Plus or minus four days. Technically, the complaint in *Stanley* was filed on March 28, 2003, but not entered on the docket, or "eod," until March 31,2003. And, while the complaint in *Castillo* was filed on June 18, 2009, the filing fee was not paid until June 19, 2009. *Cf. Hurtault v. Hess Oil V.I. Corp.*, 69 V.I. 451, 458 n.1 (Super. Ct. 2018) (citing cases regarding the effect of filing fees on statutes of limitations); *see also In re: Cases Removed to the Dist. Ct. of the V.I.*, SX-98-CV-109, *et seq.*, 2016 V.I. LEXIS 154, at *20-21 n.14 (V.I. Super. Ct. Sep. 21, 2016) (citing cases discussing "eod").

suspends the applicable statute of limitations as to all asserted members of the class.'" *Leyse*, 538 F. App'x at 161 (brackets omitted) (quoting *American Pipe*, 414 U.S. at 554)). And class action tolling continues "until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad." *Sawyer*, 642 F.3d at 563. There is no requirement in federal court of "a formal motion for class certification, or any district court ruling on class certification." *Leyse*, 538 F. App'x at 161. Although Defendants object, because the *Stanley* Plaintiffs never moved to certify a class,[23] their objections have no merit, because *Stanley* was commenced as a class action and that tolled the statute of limitations.

¶52    But once tolling ends, one of two things must occur: the former class members must move to intervene or file their own lawsuits. *Cf. Crown, Cork & Seal Co.*, 462 U.S. at 354. The *Castillo* Plaintiffs did both.[24] The question now is whether class action tolling continued while the *Castillo* Plaintiffs tried to intervene in *Stanley* or ended on September 29, 2005, once *Stanley* was no longer a class action.[25] This Court concludes that tolling ended when the *Stanley* Plaintiffs abandoned the class. By the time the *Castillo* Plaintiffs filed this case, on June 18, 2019, the statute of limitations had run on

---

[23] The *Stanley* Plaintiffs' assertion, that they abandoned class allegations because they did not have the requisite number of class members required by Third Circuit precedent, was unfounded. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (emphasis added)). Nonetheless, the reason why they decided to forego a class is irrelevant. *See Leyse*, 538 F. App'x at 161-62 (quoting *Sawyer*, 642 F.3d at 563).

[24] Plaintiffs also filed a motion in *Stanley* to certify a class but only on the Virgin Islands Plant Closing Act claim. *See Stanley III*, 2008 U.S. Dist. LEXIS 90024 at *11-27. Arguably, the April 8, 2008 motion could have tolled the statute of limitations a second time, *cf. Patrickson*, 368 P.3d at 971 (noting the possibility for more than one motion), but only as to the plant closing act claim and only until the District Court denied it. The Court declines, however, to undertaking a tolling analysis only as to the plant closing act claim because the Supreme Court of the United States subsequently held that tolling does not continue for class action filed after class action. *See China Agritech, Inc.*, 138 S. Ct. at 1804 ("The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no."). But more importantly, the Virgin Islands Plant Closing Act, 24 V.I.C. §§471-78, does not state a specific limitations period. Therefore, pursuant to title 5, section 31(3)(B) of the Virgin Islands Code, the statue of limitation would be six years for "[a]n action upon a liability created by statute . . . ." Thus, the statute of limitations for the plant closing act claim would not have run until August 2, 2011: six years from the date the class was abandoned (September 29, 2005), minus the 58 days between when the cause of action accrued, and when the class action lawsuit was filed. The same analysis would apply to the wrongful discharge claims. *See Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 540 (2015).

[25] There is yet another complication: only seventy-seven individuals were the subject of the December 29, 2005 motion; another ten were the subject of the February 1, 2006 motion. Thus, tolling may not have resumed on December 29, 2005 for all *Castillo* Plaintiffs (if it resumed at all).

the claims for breach of the duty of good faith and fair dealing (Count II), fraud (Count VI), illegal retaliation and obstruction of justice (Count V), and intentional infliction of emotional distress and negligent infliction of emotional distress (Count VI), but not the plant closing act claim (Count III) and the wrongful discharge claim (Count I).

¶53 Class action tolling cannot continue indefinitely until a plaintiff finally finds the right courthouse. There must be an end date. This Court holds that the end date is the date when the class action is no longer a class. Once *Stanley* was no longer class action, the former class members could move to intervene or file their own lawsuits. Rather than file suit, the *Castillo* Plaintiffs moved to intervene in *Stanley.* That was their right.[26] It is not clear, however, that the *Castillo* Plaintiffs should benefit from two waves of tolling: first, when they were putative members of a class, and then, after the class was abandoned, while they tried to intervene in the federal case, and pile tolling upon tolling, effectively extending the statute of limitations indefinitely. Accordingly, the Court will grant in part the Hess Defendants' and the Basic Defendants' motions and enter judgment on all counts except Counts I and III.

¶54 However, the Court is of the opinion that this issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of litigation . . . ." 4 V.I.C. § 33(c). Depending on the approach the Virgin Islands takes, the statute of limitations may have run on all claims except the statutory claims. *Castillo* was filed 1,359 days (or 3 years, 8 months, and 21 days) after *Stanley* was no longer a class action. All claims would be time-barred if tolling does not apply because, according to the Complaint, Plaintiffs were fired on February 1, 2003, and this case was not commenced until June 18, 2009. But if class action tolling applies, then some or all claims may not be time-barred. It would not be "just, speedy, [or] inexpensive," V.I. R. Civ. P. 1, to proceed to discovery and pre-trial litigation with approximately ninety plaintiffs and four defendants if the statute of limitations has run on all counts, nor would it be just, speedy, or inexpensive to proceed with only two counts if the remaining five counts would be reinstated after a direct appeal. For this reason, the Court will certify

---

[26] The order denying intervention may have been "subject to immediate review," *Stringfellow*, 480 U.S. at 377 (citing *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 524-25 (1947); *accord Bridges*, 441 F.3d at 207 ("[H]ad the would-be plaintiffs filed a motion to intervene under Rule 24(b) . . . the denial of their motion would be treated as a final judgment that is appealable."), which may be why some federal courts view such orders as dispositive and, thus, outside the authority of a federal magistrate judge to decide in the first instance, absent consent of the parties.

to the Supreme Court of the Virgin Islands the following questions: (1) does the Virgin Islands recognize intra-jurisdictional class action tolling and by extension class action tolling? and (2) if the Virgin Islands does recognize class action tolling, when does tolling end?

### III. CONCLUSION

¶55    For the reasons stated above, the Court holds that the soundest rule for the Virgin Islands is to recognize class action tolling and hold that tolling ends once the named plaintiffs abandon their efforts to pursue a class action or the trial court, in any jurisdiction, determines the case cannot proceed as a class. Here, the named plaintiffs chose not to proceed as a class. And, by the time the former class members filed this action, the statute of limitation had run on several claims. Accordingly, the Court will grant Defendants' motion in part. However, given the difference of opinion around the country on class action tolling, specifically whether it applies across jurisdictions, the Court will certify several controlling questions of law to the Supreme Court.

**Date:** March 10, 2020

_____
**ROBERT A. MOLLOY**
Judge of the Superior Court

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk
Dated: _____3/10/2020_____